UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES POSTAL SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>BELLEVUE POST OFFICE, LLC,<br><br>Defendant. | CASE NO. 2:13-cv-00115-MJP<br><br>ORDER GRANTING UNITED STATES POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT AND DENYING BELLEVUE POST OFFICE'S MOTION |

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 25, 29.) Having reviewed the motions, the responses (Dkt. Nos. 40, 42), the replies (Dkt. Nos. 47, 49), and all related papers, the Court GRANTS the Postal Service's motion and DENIES Bellevue Post Office's motion.

**Background**

This is a lease dispute between the United States Postal Service and the Bellevue Post Office LLC. The Postal Service seeks to compel specific performance of an option to purchase

real property it has leased from Defendant since 1963. Both the Postal Service and Defendant move for summary judgment.

A. Lease Agreement Contained an Option to Purchase Clause

In 1963, the Postal Service leased from Baugh Construction Company property in Bellevue, Wash. (hereafter "Bellevue Way Property"). (Dkt. No. 26-1 at 2.) The "Post Office Department Lease" contained an initial twenty-year term (from 1963-1983), with optional renewals of five to ten year periods. (Dkt. No. 26-1 at 2.) In total, if it exercised all of these renewals, the Postal Service could lease the Bellevue Way Property until May 2013. (Id.)

The Lease also contained an option contract, wherein the Postal Service could purchase the property for a set price at the end of each renewal period, or at the end of the full term. That clause set out the following:

> The government shall have the option to purchase the fee simple title to the leased premises, including the land, at the following respective times and prices:
> At end of the basic lease term….$575,000.00
> At the end of first 10-year renewal option….$500,000.00
> At the end of first 5-year renewal option….$450,000.00
> At the end of second 5-year renewal option….$400,000.00
> At the end of third 5-year renewal option….$300,000.00
> At the end of fourth 5-year renewal option….$300,000.00
> in accordance with any applicable Federal States in effect now or hereafter while this lease is in effect; provided, however, that the Government shall give the Lessor notice of the election to purchase at least one year in advance of the respective times set out next above.

(Dkt. No. 26-1 at 3.)

In 1968, the then owner of the property, Edward Ester, Lorraine Ester, Josef Diamond and Violett Diamond, and the Postal Service executed an Amendment to the Lease. The Amendment, entitled "Post Office Department Amendment to Lease (Tax Clause Rider)" made two substantive changes to the Lease: (1) it established a new schedule for rent amounts for the

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 2

optional lease renewals; (2) it required the government pay the applicable real estate taxes. (Dkt. No. 26-2 at 2.) It did not address the terms of the purchase option. (Id.).

After the 1968 Amendment, ownership of the Bellevue Way Property changed several times, but always included some combination of the Ester and Diamond families. Lorraine Ester, however, since 1964 has held an interest in the Property. (Dkt. Nos. 27-1 at 3-8, 27-2 at 2-3.)

B. For Fifty Years the Postal Service Satisfied Its Rent Obligations And Extended the Lease Renewals

A year before the initial lease term expired in 1983, the Postal Service sent a letter exercising its first lease renewal. The letter sent by certified mail to "Edward R. Ester and Josef Diamond, Attorneys-in-Fact under Lease," read:

> The Postal Service is hereby exercising the ten-year renewal option available under the terms of aforementioned agreement and Amendment to Lease dated October 18, 1968. There are four five-year renewal options remaining.
>
> Your cooperation in providing quarters for the subject facility is appreciated. Please notify this office of any change in your address or the ownership of your property.

(Dkt. No. 26-3 at 6.) The letter was signed by Gary Duncan, a contracting officer with the Postal Service. (Id.) The renewed lease expired in May 1993.

In October 1992, the Postal Service sent a letter to "Edward R & Lorraine M Ester, Steve Foreman, Michelle Foreman, Cynthia L Diamond and Jonathan Diamond" exercising its option to renew the contract for another five years. Postal Service contracting officer John Logan signed the letter. (Id. at 5.)

In 1997, for a third time, the Postal Service exercised the next renewal term. (Id. at 4.) It sent a letter to Estate of Edward Ester, Lorraine Ester, Steve Foreman, Michelle Foreman, Cynthia Diamond and Jonathan Diamond stating, "[p]ursuant to the contract with you covering

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 3

this facility, the Postal Service hereby exercises its option to renew said contract…There is/are renewal options remaining.  In all other respects the said contract shall remain the same and is hereby confirmed….Thanks for providing this facility for postal use." (Dkt. No. 26-3 at 4.)  The third renewal period lasted from May 4, 1998 to May 3, 2003.

Before that term expired, the Postal Service sent notice of their fourth extension of the Lease.  The Postal Service sent the letter to "Lorraine Ester, Pers. Rep. Estate of Edward Ester S. & M. Foreman / C. & J. Diamond."  Again, it stated the Postal Service "exercises its option to renew said contract."  The renewal period lasted from May 4, 2003 to May 3, 2008.  (Id. at 3.)

The Postal Service exercised its final lease option in 2005 by sending a letter to "Lorraine Ester, Pers. Rep. Estate of Edward Ester S. & M. Foreman / C. & J. Diamond."  (Id. at 2.)  The final renewal period lasted from May 2008 to May 3. 2013.

The Lease obligated the Postal Service to pay annual rent on the Bellevue Way Property in amounts ranging from $40,000.00 to 60,850.00.[1]  (Dkt. No. 26-1 at 2.)  The rental obligations were stepped: for each renewal period, the Postal Service paid smaller amounts.  (Dkt. No. 26-2 at 2.)  For the fifty-years the Postal Service occupied the property (until the lease ended in 2013 and this dispute arose), it paid all rent owing.  (Dkt. No. 43-1 at 10-12.)

C. Postal Service Exercises its Option to Purchase in Conformity with the Lease, But Defendant Refused to Sell

Before the end of the fifty-year lease period, the Postal Service sent written notice of its intent to purchase the Bellevue Way Property.  (Dkt. No. 26-4 at 2.)  The September 30, 2008 letter was sent to "Lorraine Ester, Trustee."  It read, "[i]n accordance with Paragraph 7 of the Lease, dated September 16, 1963, signed by the Postal Service and Lorraine Ester, Trustee as of

---

[1] The Amendment to the Lease reduced the rent obligations to a range of $34,250.00 to $54,250.00 per year.  (Dkt. No. 26-2 at 2.)

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 4

September 30, 2008, this letter shall constitute the Postal Service's written notice of exercising its option to purchase the fee simple title to the leased premises…for $300,000." (Id.)

The Postal Service again sent notice of its intent to exercise the purchase options in April 2012, more than one year before the Lease expired. (Dkt. No. 26-5 at 2.) Sent to "Ms. Lorraine Ester Trustee," the letter stated that "[t]he full purchase price is currently held in escrow….In accordance with the lease, the Postal Service is fully prepared to close by the end of the current lease term or May 3, 2014." Further, it explained: "Please note that the Postal Service intends to publically market the Property for sale in the near future." (Id.)

Approximately six months later, attorneys representing the Property's owners responded to the Postal Service's exercise of the purchase option:

> We have reviewed the lease history for this Property, including correspondence from the Postal Service. Based on our review, we do not agree that the Postal Service has any right to purchase the Property. In particular, but without limitation, we believe there are deficiencies with authority, renewal timelines, and notice as well as document irregularities….Our clients are good people and engage in fair business transactions.

(Dkt. No. 26-6 at 2.)

Prior to that letter, the Postal Service had never received notice of any defect regarding its lease extensions or failure to perform under the Lease. Dkt. No. 43-1 at 17-18. Lorraine Ester, the Bellevue Way Property's owner since 1964 concedes: "I do not recall ever informing the United States Postal Service, in writing or by any other means, that any of its Extensions of Renewal Option for the Property had not been addressed to the proper party or parties, nor am I aware of anyone else having so informed the Postal Service, prior to my counsel's letter of October 12, 2012." (Dkt. No. 43-2 at 12-13.) Nor does the record show the Esters notified the Postal Service of any defect with the validity of the option clause. Instead, in 1998 and 2001, the

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 5

Esters sought to strike the option clause from Lease in exchange for $1,000,000. (Dkt. Nos. 26-4, 26-8 at 2.)

### D. Postal Service Files Suit Seeking Specific Performance

The Postal Service sued in January 2013 asserting a claim for declaratory relief against Lorraine Ester (in both her personal capacity and as trustee for the Trust for Descendents of Edward R. and Lorraine M. Ester), DELE LLC, an Alaska limited liability company, and Bellevue Post Office LLC, an Alaska limited liability company who now owns the Bellevue Way Property. (Dkt. Nos. 1, 19). The Postal Service seeks an order directing "Defendants to sell, transfer, and convey title to the Leased Property to USPS, in accordance with the Lease and for the monetary consideration of Three-Hundred Thousand Dollars ($300,000)." (Dkt. No. 19 at 8.)

Defendants deny the allegations and assert two counterclaims. (Dkt. No. 21.) First, Defendants ask the Court to declare "the 1968 Lease no longer valid or enforceable, and Plaintiff's purported exercise of an option to purchase the Property invalid." (Id. at 14.) Defendants also assert a counterclaim for unpaid rent. (Id. at 15.)

In October 2013, the parties stipulated to dismissing Defendants Lorraine Ester and DELE LLC. (Dkt. No. 38.) Only Bellevue Post Office LLC remains as a defendant. Both parties move for summary judgment. (Dkt. Nos. 25, 29.)

## Discussion

### A. Legal Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 6

Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

    B. Having Performed its Obligations Under the Lease, the Postal Service is Entitled to the Benefit of the Bargain

Interpreting a Postal Service lease requires the Court to apply federal common law. See Begner v. United States, 428 F.3d 998, 1004 (11th Cir. 2005) (noting that "[f]ederal courts use federal common law to evaluate government contracts"); Forman v. United States, 767 F.2d 875, 879–80 (Fed.Cir. 1985) (applying federal law to postal lease entered between Post Office Department and private lessor); Kelley v. United States, 19 Cl.Ct. 155, 162 (1989) (treating postal lease and lease modification as a subject for general federal contract law). "In contract interpretation, the plain and unambiguous meaning of a written agreement controls." Arko Executive Services v. United States, 553 F.3d 1375, 1379 (Fed.Cir. 2009). The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract. Id. (citing Hercules Incorporated v. United States, 292 F.3d 1378, 1380–1381 (Fed.Cir. 2002). To exercise an option to the contract validly, the government must exercise the option in exact accord with the terms of the contract. Id.

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 7

In the present case, there is no material dispute that the Postal Service complied with it rent and other lease obligations for the fifty-year period it occupied the Bellevue Way Property. (Dkt. No. 43-1 at 10-12.) Nor is there any dispute the Postal Service is prepared to pay the $300,000.00 price tag specified for the property. (Dkt. Nos. 26-1 at 3, 41-1 at 22-23.)

Nonetheless, Defendant attacks the validity of the option clause arguing it had lapsed when the Postal Service attempted to exercise it or that the Postal Service's notice was defective. As detailed below, neither of these arguments have merit.

### 1. Contracting Authority for 1982 and 1992 Lease Renewals

Defendant argues for summary judgment, and in opposition to the Postal Service's motion, on the theory the Postal Service cannot prove an essential element of its contract claim: the Lease renewals in 1983 and 1993 were properly authorized. (Dkt. No. 49 at 5.) Defendant is legally and factually incorrect.

Legally, Defendant's argument mischaracterizes the burden of ensuring the authority of a government agent:

> It is well settled that private parties contracting with the government bear an affirmative responsibility to ascertain the scope of authority possessed by government officials with whom they transact business.

USPS v. Sunshine Development, 674 F. Supp. 2d 619, 626 (M.D. Penn. 2009); See also Heckler v. Community Health Servs., 467 U.S. 51, 63 (1984) (discussing the "general rule" that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents"), Northrop Grumman Ship Sys. v. Ministry of Def., 575 F.3d 491, 500 (5th Cir. 2009) ("a party who seeks to contract with the government bears the burden of making sure that the person who purportedly represents the government actually has that authority"). In the present case, it was the duty of Defendant's predecessors, when the lease was extended, to

ascertain the scope of the contracting authority of Gary Duncan (who signed the 1982 renewal letter) and John Logan (who signed the 1992 renewal letter).

Moreover, Defendant's attempt to unwind the renewals more than thirty years after Postal Service's notices is without legal support. Indeed, it cites no case for the proposition that where the government sent notices of renewal (by Postal Service contracting agents) and performed under the lease, the property owner may now use the government authority doctrine as a defense. Essentially, Defendant concocts this argument from whole cloth.

Defendant also errs in its characterization of the facts regarding the contracting authority of Mr. Logan and Mr. Duncan. Defendant claims "USPS cannot prove that the lease was renewed by individuals with contracting authority" and "USPS's inability to prove the authority of Gary Duncan and John Logan is fatal to its request for specific performance." (Dkt. No. 29 at 16.) This is incorrect; both men submit declarations regarding their authority. (Dkt. Nos. 45-46.) Gary Duncan, who renewed the lease in 1982 (for the lease period from 1983 to 1993), testified to verifying his monetary authority before sending such notices. John Logan, who renewed the lease in 1992 (for the lease period from 1993 to 1998), testified to holding a contracting officer's warrant sufficient to authorize the renewal on that date. (Id.)

Finally, USPS v. Sunshine Development, 674 F. Supp. 2d 619 (M.D. Penn. 2009), relied on by Defendant, is distinguishable. In Sunshine Development, the government agent who exercised a purchase option for real property lacked the requisite authority to bind the Postal Service. Id. at 626. The owner raised the issue of the agent's authority before the purchase option expired. Yet, the Postal Service failed to cure this deficiency. Id. The Court rejected the Postal Service's arguments for specific performance. Here, Defendant never sought to ascertain

the contracting authority of Mr. Logan and Mr. Duncan. And, unlike <u>Sunshine Development</u>, the record shows Mr. Logan and Mr. Duncan actually had the requisite authority.

        2. The Postal Service's Notice of the Lease Renewals and Option to Purchase were Proper

Defendant also submits the Postal Service failed to provide notice of the renewals as required in 1968 Amendment. It argues the Amendment redefined the term "Lessors," such that the Postal Service was required to send the lease renewals to "Edward R. Ester, Lorraine M. Ester, Josef Diamond, and Violett Diamond," even if they no longer owned the property. (Dkt. No. 29 at 3.) Because the Postal Service did not provide written notice to these four individuals, according to Defendant, the Lease lapsed. (<u>Id.</u> at 16.)

The 1963 Lease required renewal notices "be given in writing to the Lessor at least ninety (90) days before the end of the original lease term or any renewal term." (Dkt. No. 26-1 at 2.) No separate definition of Lessor accompanied the provision, but in the recitals, the Lease read, "[t]his lease…between Baugh Construction Company…for itself, it successors, and assigns, hereinafter called the Lessor, and the United States of American, herein after called the Government." (Id.) By the 1968 Lease Amendment, Baugh Construction had conveyed its interest in the property to Edward R. Ester, Lorraine M. Ester, Josef Diamond, and Violett Diamond. (Dkt. No. 27-1 at 3.) The Amendment read:

> Edward R. Ester and Lorraine M. Ester, his wife; and Josef Diamond and Violett Diamond, his wife…hereinafter called the Lessor, leases to the United States of America, hereinafter called the Government, certain premises…

(Dkt. No. 26-2.) Defendant posits the Amendment stripped "successors and assigns" from the definition of "Lessor."

Defendant's interpretation runs contrary to established rules of contract interpretation, requiring a "written contract must be read as a whole and every part interpreted with reference to

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 10

the whole" Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir. 1989). Applying that rule here reveals the absurdity of Defendant's interpretation. Paragraph 3 of the Amendment requires the Lessor to present the Government with a tax bill from each taxing authority. The Government, in turn, is required to send the Lessor a check for the taxes and the Lessor is required to pay the taxing authority. (Dkt. No. 26-2 at 2.) If Defendant's interpretation were true, parties having no interest in the property would receive tax bills and pay those taxes. This makes little practical sense. The only reasonable interpretation is that the Lease retained the "successors, and assigns" language from the original 1963 Lease.

In the alternative, Defendant argues that even if the Lease required notice to the property's actual owners, as opposed to the four individuals identified in the Amendment, summary judgment should still be found it its favor because the Postal Service failed to provide notice to the actual owners. (Dkt. No. 29 at 20-21.) The Court finds this argument beyond the pale, when at least one of the property's owners received actual notice. (Dkt. Nos. 26-3 at 2-3; 27-1 at 3-8, 27-2 at 2-3.) Even if there was some deficiency, Defendant identifies no prejudice.

The lack of prejudice distinguishes this dispute from the cases cases cited by Defendant, Kelley v. United States, 19 Cl. Ct 155 (Cl.Ct. 1989), and Wapato Heritage LLC v. United States, 637 F.3d 1033 (9th Cir. 2011). In Kelley, the Postal Service failed to have a third appraiser confer with the other appraisers. The Court found this material term of the contract should have been complied with to settle a price dispute. Here, Defendant can point to no reason why the Court should require strict compliance as to notice.

Likewise, Wapato does not compel the strict notice requirements Defendant suggests. The contract at issue in Wapato required the optionee, in exercising an option to lease allotted land in Indian country, to notify the Bureau of Indian Affairs ("BIA") as well as the nearby

landowners. Wapato's predecessor in interest only sent notice to the BIA. 637 F.3d at 1036. The BIA notified Wapato of the defects in notice more than two months before the option expired; Wapato did not send notice to the landowners. Here, in contrast, Defendant's predecessors did nothing to notify the Postal Service of any defect in its renewal notices. (Dkt. No. 43-1.) Moreover, there is no question the Esters and Diamonds received notice and treated the Lease as viable, as evidenced in their communications with the Postal Service.[2] (See Dkt. No. 40-4 at 2.) In 1986, for example, Josef Diamond demanded the Postal Service follow through with the agreement to purchase the property. (Dkt. No. 27-3 at 3.) Defendant's reliance on Kelley and Wapato is misplaced.

Last, Defendant nitpicks the Postal Service's notice of its decision to purchase the property: "All communications…purporting to give notice of or confirm the Government's intent to purchase the Property can only be interpreted as being addressed to Lorraine Ester in her capacity as a 'Trustee' (of the Ester Trust), and not to her in her individual/personal capacity." (Dkt. No. 29 at 23.) The letter was addressed to "Lorraine Ester Trustee." (Dkt. No. 26-4 at 3.) The certified mail receipt indicates it was received by "L.E." (Id.) Defendant offers no authority or explanation as to why the notice is insufficient where an individual owns property in two capacities. This argument fails.

C. The Court Orders Specific Performance

The Postal Service has a valid option to purchase the property. The Court finds there is no genuine issue of material fact that the Postal Service notified Ms. Ester of its intention to purchase the property more than one-year before the expiration of the Lease. Further, the Postal

---

[2] For the 2001 notice (renewing the 2003-2008 period) and 2005 notice (renewing the 2008-2013 period), were signed for by Ms. Lorraine's son or daughter-in-law at Ms. Lorraine's residence.

ORDER GRANTING UNITED STATES POSTAL
SERVICE'S MOTION FOR SUMMARY
JUDGMENT AND DENYING BELLEVUE POST
OFFICE'S MOTION- 12

Service represents that it is prepared to pay the amount the parties negotiated in 1963, $300,000.00. It therefore has satisfied the terms of the option clause.

## Conclusion

In sum, a valid agreement exists between the parties and the Postal Service is entitled to the benefit of that bargain. The Court therefore GRANTS the Postal Service's motion (Dkt. No. 25) and DENIES Defendant's motion (Dkt. No. 29). Defendant is ORDERED to specifically perform its obligations by tendering title of 1171 Bellevue Way NE in Bellevue, Wash., to the Postal Service in exchange for $300,000.00 within thirty (30) days of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 30th day of January, 2014.

Marsha J. Pechman
Chief United States District Judge